Morton S. Taubman and Ilene P. Taubman, Petitioners *v.* Commissioner of Internal Revenue, Respondent

Docket No. 5626–71. Filed August 29, 1973.

Morton S. Taubman, pro se.
*Gregory A. Robinson,* for the respondent.

Forrester, *Judge:* Respondent has determined a deficiency of $161 in petitioners' income tax for the calendar year 1969. The sole issue for our decision is whether petitioners are entitled, under section 162(a),[1] to a deduction of $764 for expenses incurred in pursuit of a

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

legal education. If we decide for respondent on this issue, it is not in dispute that we will then disallow $12 of the $522 medical expense deduction claimed by petitioners.

Some of the facts were stipulated and are so found.

Petitioners Morton S. Taubman and Ilene P. Taubman are husband and wife, who, at the time they filed the petition herein, resided in Laurel, Md. They filed their joint Federal income tax return for the calendar year 1969 with the district director of internal revenue, Baltimore, Md. Ilene P. Taubman is a party to this proceeding solely by virtue of having filed a joint income tax return, and the designation "petitioner" will hereinafter refer only to Morton S. Taubman.

In June of 1965, petitioner obtained a bachelor of science degree in accounting from the University of Baltimore. Soon afterwards, in July 1965, he became employed as a revenue agent with the Internal Revenue Service, a position he held until 1968. While working as a revenue agent, petitioner decided that he wished to acquire a more in depth knowledge of Federal tax law. Upon determining that legal studies would be the most worthwhile in helping him to achieve such goal, petitioner entered the University of Baltimore, College of Law, as a night student, sometime in 1966. In November 1968, while still pursuing such legal studies, he became a C.P.A., and about the same time, took a position with the national accounting firm of Lybrand, Ross Bros. and Montgomery. In 1972, he became associated with the C.P.A. firm of Levanthol, Kretstein & Horwath, and worked in their tax department. Petitioner's specialty was in the area of real estate. Much of his work consisted of rendering advice to attorneys and their clients in connection with public and private offerings of stock in real estate ventures.

In 1969, the taxable year involved in the instant case, petitioner obtained a bachelor of laws degree from the University of Baltimore.[2] That year petitioner took the following courses: Taxation (2 semester hours), administrative law (2 semester hours), practice court (2 semester hours), conflict of laws (2 semester hours), Federal jurisdiction (1 semester hour), insurance (1 semester hour), and Federal estate and gift taxation (2 semester hours). In connection with his attendance at law school in 1969, he incurred the following expenses:

| | |
|---|---|
| Tuition (12 semester hours at $18 an hour) | $216 |
| Books and course materials | 248 |
| Travel | 300 |
| | 764 |

[2] While the program in which he had enrolled normally demanded a 4-year attendance at law school, petitioner had attended summer school, in addition to regular classes, and hence was able to graduate a year earlier.

In 1969, petitioner was a member of the following professional associations: District of Columbia Institute of Certified Public Accountants, Maryland Institute of Certified Public Accountants, American Institute of Certified Public Accountants.

In 1970, petitioner passed the Maryland State bar examination and became a member of the Maryland bar. He has continued his pursuit of legal studies by attending tax courses offered by Georgetown University, College of Law, master of laws program.

On his 1969 joint return, petitioner claimed a deduction of $764 for expenses incurred in connection with his attendance at law school in 1969. In his notice of deficiency, respondent disallowed in full such claimed deduction, and in addition, disallowed $12 of a claimed $522 deduction for medical expenses.

## OPINION

The sole issue for our decision is whether respondent properly disallowed a $764 deduction claimed by petitioner for expenses incurred in connection with his attendance at law school in 1969.[3] It is respondent's contention that such expenses, which included costs of tuition, books, other course materials, and travel, were not "ordinary and necessary" business expenses within the meaning of section 162(a). In support of his argument, respondent relies on section 1.162–5, Income Tax Regs.,[4] which provides, in part, that "expenditures made by an individual for education which is part of a program of study being pur-

---

[3] It is not in dispute that if we uphold respondent's disallowance of said educational expenses, that we must also uphold his disallowance of $12 of petitioner's claimed $522 medical expense deduction. This latter disallowance arises because, by disallowing the claim for educational expenses, respondent thereby increased petitioner's adjusted gross income, thus decreasing the medical deduction allowed under sec. 213.

[4] Sec. 1.162–5 Expenses for education.

(a) General rule. Expenditures made by an individual for education (including research undertaken as part of his educational program) which are not expenditures of a type described in paragraph (b) (2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education—

(1) Maintains or improves skills required by the individual in his employment or other trade or business, or

(2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation.

(b) Nondeductible educational expenditures—(1) In general. Educational expenditures described in subparagraphs (2) and (3) of this paragraph are personal expenditures or constitute an inseparable aggregate of personal and capital expenditures and, therefore, are not deductible as ordinary and necessary business expenses even though the education may maintain or improve skills required by the individual in his employment or other trade or business or may meet the express requirements of the individual's employer or of applicable law or regulations.

* * * * * * *

(3) Qualification for new trade or business. (1) The second category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is part of a program of study being pursued by him which will lead to qualifying him in a new trade or business. In the case of an employee, a change of duties does not constitute a new trade or business if the new

sued by him which will lead to qualifying him in a new trade or business" are either nondeductible personal expenses, or a nondeductible "inseparable aggregate of personal and capital expenditures." Sec. 1.162-5(b)(1) and (3), Income Tax Regs. According to respondent, petitioner's studies at the University of Baltimore, College of Law, clearly fit the description of studies which lead to qualification for a new trade or business, namely the practice of law.

Petitioner does not dispute that the aforementioned regulation which posits an objective test would deny him any deduction under section 162(a). He argues, however, that the regulation should not be applicable in his situation. For when he entered law school in 1966, he contends, the applicable regulation provided for a subjective "primary purpose" test in determining whether educational expenses were deductible.[5] Under that regulation, petitioner could deduct the expenses claimed in the instant case if he could show that the education was "undertaken primarily for the purpose of: (1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business." Sec. 1.162-5(a)(1), Income Tax Regs.[6] Over the period of his attendance at law school, petitioner points out, Congress did not change the applicable statutory working, and it is his conclusion from this circumstance that the Commissioner should not be allowed to change the test for deductibility via a regulation.

We reject petitioner's argument, for respondent has a long and well-recognized ability to change regulations, despite a lack of change in statutory language, and then to apply such altered regulations, prospectively; assuming, of course, that the new regulations are valid interpretations of the statute. *Helvering* v. *Wilshire Oil Co.*, 308 U.S. 90, 97, 100–101 (1939) ; *Continental Oil Co.* v. *Jones*, 176 F.2d 519, 522

---

duties involve the same general type of work as is involved in the individual's present employment. For this purpose, all teaching and related duties shall be considered to involve the same general type of work. The following are examples of changes in duties which do not constitute new trades or businesses :

(*a*) Elementary to secondary school classroom teacher.

(*b*) Classroom teacher in one subject (such as mathematics) to classroom teacher in another subject (such as science).

(*c*) Classroom teacher to guidance counselor.

(*d*) Classroom teacher to principal.

(ii) The application of this subparagraph to individuals other than teachers may be illustrated by the following examples :

*Example* (*1*). A, a self-employed individual practicing a profession other than law, for example, engineering, accounting, etc., attends law school at night and after completing his law school studies receives a bachelor of laws degree. The expenditures made by A in attending law school are nondeductible because this course of study qualifies him for a new trade or business.

*Example* (*2*). Assume the same facts as in example (1) except that A has the status of an employee rather than a self-employed individual, and that his employer requires him to obtain a bachelor of laws degree. A intends to continue practicing his nonlegal profession as an employee of such employer. Nevertheless, the expenditures made by A in attending law school are not deductible since this course of study qualifies him for a new trade or business.

[5] The regulation was amended to its current form in 1967 by T.D. 6918, 1967–1 C.B. 36.

[6] See fn. 5 *supra.*

(C.A. 10, 1949); *Ernest A. Jackson,* 9 T.C. 307, 312 (1947), (dictum), affd. 172 F.2d 605 (C.A. 7, 1949), certiorari denied 338 U.S. 816 (1949); *Aviation Capital* v. *Pedrick,* 56 F.Supp. 964, 966 (S.D.N.Y. 1944). Cf. *White* v. *Winchester Club,* 315 U.S. 32, 39–40 (1942); *Helvering* v. *Reynolds,* 313 U.S. 428, 432 (1941). This is precisely what respondent has done in the instant case. The previous section 1.162–5, Income Tax Regs., embodying the subjective "primary purpose" test, was issued in 1958. T.D. 6291, 1958–1 C.B. 63, 67. In 1967, the regulation was amended to its current form by T.D. 6918, 1967–1 C.B. 36, 37–39, and respondent subsequently allowed taxpayers, as to all taxable years beginning before January 1, 1968, to rely on either the old or the new regulation in supporting claims for educational expense deductions. Rev. Rul. 68–191, 1968–1 C.B. 67. The application of the new regulation to later taxable years, including the taxable year of 1969 which is now before us, is a clearly prospective application, and we have recognized the inability of taxpayers to elect to be treated under the old section 1.162–5, Income Tax Regs., for such later years. *Jeffrey L. Weiler,* 54 T.C. 398, 400 fn. 2 (1970); *David N. Bodley,* 56 T.C. 1357, 1359 fn. 2 (1971).

In addition, the new regulation has been found to be a valid exercise of the Commissioner's rule-making authority in numerous decisions of this Court. *Ronald F. Weiszmann,* 52 T.C. 1106, 1111–1112 (1969), affd. 443 F.2d 29 (C.A. 9, 1971); *Jeffry L. Weiler,* 54 T.C. at 398; *David N. Bodley,* 56 T.C. at 1361. *See also Melnik* v. *United States* (C.D. Cal. 1973, 32 A.F.T.R. 2d 73–5230, 73–5232, 73–2 U.S.T.C. par. 9521, p. 81, 640). In the circumstance before us, involving the prospective application of a valid regulation, we adopt the spirit of the rationale laid down by the Supreme Court in *Wilshire Oil:*

These regulations applied prospectively only and did not purport to reach back to earlier years when the taxpayer relied on a different rule or practice. Tax statutes and tax regulations never have been static. Experience, changing needs, changing philosophies inevitably produce constant change in each. One making an election in the 1925 return took the risk that the method of treatment of depletion might be changed by the Congress, or, where power existed, by the Commissioner. Any other conclusion would make the application of changes pursuant to regulations, though prospective, dependent on fortuitous circumstances under which each taxpayer made such an election. Rigidity, as well as confusion, in administration of tax laws would be the result. [*Helvering* v. *Wilshire Oil Co.,* 308 U.S. at 97.]

We find that it was proper for respondent to apply only the new section 1.162–5, Income Tax Regs., to petitioner in the instant case, and that such regulation must control our decision here.[7]

---

[7] Thus, petitioner's reliance on *Walter T. Charlton,* T.C. Memo. 1964–59, and *Frank Kilgannon,* T.C. Memo. 1965–118, is misplaced, as both those cases were decided under the old pre-1968 regulation which embodied the subjective "primary purpose" test. We find those cases to be lacking in precedential value for the purposes of our decision in the instant case. *Jeffry L. Weiler,* 54 T.C. 398, 402 (1970).

Applying the new regulation to the instant case, we find that petitioner's studies in 1969 at the University of Baltimore, College of Law, were "part of a program of study being pursued by him which would lead [and did in fact lead] to qualifying him in a new trade or business." Sec. 1.162–5(b)(3), Income Tax Regs. The situation in the instant case is substantially similar to that which was before us in *Jeffry L. Weiler, supra.* There, the taxpayer was a C.P.A. working for the Internal Revenue Service as a revenue agent. A deduction for expenses he incurred in pursuit of a law degree was disallowed by respondent, and we upheld such disallowance. Citing section 1.162–5(b)(3), Income Tax Regs., we said:

While it is true, that petitioner may never leave the IRS, or may rejoin a public accounting firm, or even become a tax attorney, he nevertheless is qualifying himself as a lawyer, a trade or business separate and distinct from that in which he is now engaged and his educational expenses are nondeductible. [54 T.C. at 402.]

Similarly we find, under the objective test set forth in the regulation, that petitioner, now a member of the Maryland bar, is not entitled to a deduction of $764 for expenses incurred in pursuit of his bachelor of laws degree.

For the first time, in his brief, petitioner raises what appears to be an equal protection attack on the new regulation. The regulation, he points out, allows teachers to take deductions for courses which train them for positions as principals or guidance counselors. Individuals already in a trade or business, however, are not allowed such deductions for the expenses incurred in acquiring a law degree, even when such legal training would assist them in their current trade or business. We will not consider this contention, however, under our well-established rule that constitutional issues not raised specifically in the pleadings are not properly before the Court. *Estate of Mary Redding Shedd,* 37 T.C. 394, 399 (1961), affirmed on other issues 320 F.2d 638 (C.A. 9, 1963). Cf. *J. William Frentz,* 44 T.C. 485, 490–491 (1965), affirmed on another issue 375 F.2d 662 (C.A. 6, 1967); *Sicanoff Vegetable Oil Corporation,* 27 T.C. 1056, 1065–1066 (1957), and cases cited therein, reversed on another issue 251 F.2d 764 (C.A. 7, 1958).

However, even were such issue to have been properly pleaded, we would not consider it in the instant case. Petitioner has presented no evidence upon which an argument could be made that teachers are in as much a separate trade or business from principals and guidance counselors, as are accountants from lawyers. In the absence of any information or evidence upon which such a judgment could be made, we find it inadvisable to consider the argument, and refuse to do so.

We considered a similar equal protection argument in *Ronald F. Weiszmann,* 52 T.C. at 1112, but concluded that the record there was not adequate for us to determine whether the deductions allowed to

teachers were analogous to the deductions being sought by a patent trainee. The Ninth Circuit, in affirming, had no such difficulty. *Weiszmann* v. *Commissioner*, 443 F.2d at 30 (C.A. 9, 1971), "Being a teacher is a sine qua non for a principal's job, * * * while having been a patent trainee is not a prerequisite to being a patent attorney." [8]

Because we have upheld respondent's disallowance of the deduction claimed by petitioner for educational expenses, we also uphold respondent's disallowance of $12 of the amount claimed by petitioner for medical expenses.

*Decision will be entered for the respondent.*

---

[8] In an appropriate case we may not entirely agree with the Ninth Circuit, for in other situations it may be arguable that respondent's regulations exhibit a favoritism toward the teaching profession which is discriminatory. See Judge Tannenwald's dissent in *John O. Ford*, 56 T.C. 1300, 1312 (1971).